## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
|  | : |
| Plaintiff, | : |
|  | : |
| v. | : |
|  | : |
| TERRY L. DOWDELL, both individually and doing business as | : Civil Action No. |
| "T.L. Dowdell & Associates," | : 3:01CV00116 |
| BIRGIT MECHLENBURG, | : |
| KENNETH G. MASON, | : Judge James H. Michael, Jr. |
| DOWDELL DUTCHER & ASSOCIATES, INC., | : |
| VAVASSEUR CORPORATION, | : |
| EMERGED MARKET SECURITIES, DE-LLC; and | : |
| DANIEL DEROUARD, | : |
|  | : |
| Defendants, | : |
|  | : |
| MARY DOWDELL, MARCIA DOWDELL, REBECCA DOWDELL, | : |
| ADAM DOWDELL, WENDY DOWDELL, DAVID DOWDELL, | : |
| TERRY DOWDELL JR., NONA PIERCE, CYNTHIA PIERCE, | : |
| STEPHEN PIERCE, WILLOWOOD DESIGN CORPORATION, | : |
| and AUTHORIZED AUTO SERVICE, INC., | : |
|  | : |
| Relief Defendants. | : |

**05**MBD **10192**

### FIRST AMENDED COMPLAINT

Plaintiff the Securities and Exchange Commission ("SEC") alleges as follows:

### NATURE OF THE COMPLAINT

1. As is described in detail below, since April 1998 Defendant Terry L. Dowdell has

orchestrated a Ponzi scheme in which he has raised at least $29 million from more than 60

investors in the United States and abroad through the sale of fictitious "prime bank" securities.

These so-called prime bank securities do not exist, and have been commonly used to defraud the investing public.

2.     Through a multi-level marketing structure he directs that includes Defendants Birgit Mechlenburg ("Mechlenburg") and Ken Mason ("Mason"), Dowdell offered and sold investments in a trading program (the "Vavasseur program") purportedly being operated by Defendant Vavasseur Corporation ("Vavasseur"), a Bahamian corporation that Dowdell controls.

3.     However, the investor money was not used for any trading program, and Dowdell was instead operating a classic Ponzi scheme, paying old investors with new investor money.

4.     Dowdell has misappropriated millions of dollars of Vavasseur investor funds for himself, his family and his promoters.

5.     In March 2001, Dowdell informed the SEC, through his attorneys, that Vavasseur had ceased all activities in the United States, had terminated its relationship with Dowdell, and was returning all U.S. investor money. To this end, Dowdell produced records to confirm the return of U.S. investor money.

6.     Notwithstanding Dowdell's representations, Dowdell and Vavasseur are continuing to operate in the United States and large sums of investor money continue to flow in and out of U.S. bank accounts.

7.     In addition to the Vavasseur scheme, Dowdell and the other Defendants have been attempting to defraud the investing public with various other "prime bank" schemes, including one scheme in which Dowdell and Defendant Daniel Derouard attempted to defraud the North Slope Borough, an Alaskan municipality, out of $100 million. In this scheme, Dowdell and Derouard falsely represented that the Federal Reserve Bank was somehow involved in the investment program, that Dowdell had a relationship with a high-ranking Federal Reserve Bank

2

official who was involved in the program, and that Federal Reserve Bank approval was required for participation in the program.

8.      The SEC is bringing this action to put an immediate stop to the Vavasseur program, to freeze Vavasseur investor assets that remain in the U.S. and to repatriate investor assets that have been transferred to overseas accounts, to avoid further dissipation pending resolution of this action, to ultimately return these assets to the Vavasseur investors, to enjoin Defendants from conduct that violates the federal securities laws, to impose civil penalties against Defendants for their unlawful conduct, and for such other relief as is sought herein.

## JURISDICTION

9.      This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. §78aa] and 28 U.S.C § 1331.

10.     Defendant Dowdell and the other Defendants, directly and indirectly, have made and are making use of the means and instrumentalities of interstate commerce and of the mails in connection with the transactions, acts, practices and courses of business alleged herein in the Western District of Virginia and elsewhere.

## DEFENDANTS

11.     **Terry L. Dowdell** ("Dowdell") is approximately 55 years old and is a resident of Charlottesville, Virginia. At all relevant times, Dowdell has been president of Defendant Dowdell, Dutcher & Associates, Inc., a currently inactive Florida corporation. At all relevant times, Dowdell has been a director of Defendant Vavasseur Corporation ("Vavasseur"), a Bahamian corporation. Dowdell has also been doing business as "T.L. Dowdell & Associates" ("TLDA").

3

12. **Birgit "Gitte" Mechlenburg** ("Mechlenburg") is approximately 53 years old and is a resident of Lenox, Massachusetts. From 1985 to 1993, Mechlenburg was a registered representative of Townsley Associates and Co., then a broker-dealer. From 1993 to 1996, Mechlenburg was the sole officer and director of Motzfeldt Funding Corporation ("Motzfeldt"), a Liberian Corporation. On March 23, 1995, a Final Judgment of Permanent Injunction and Other Relief was entered against Mechlenburg, by consent, in the United States District Court for the Southern District of New York, permanently enjoining Mechlenburg from future violations of Sections 17(a)(2) and (3) of Securities Act of 1933, in connection with a prime bank scheme that she was operating through Motzfeldt. On May 23, 1996, the SEC, in a related Administrative Proceeding arising from the same conduct, entered an order, based on an offer of settlement by Mechlenburg, imposing an industry bar with a right to reapply after one year.

13.   **Kenneth G. Mason** ("Mason") is approximately 50 years old and a resident of Wilmette, Illinois and is an attorney licensed to practice in the state of Illinois.

14.   **Vavasseur Corporation** ("Vavasseur") is a foreign corporation registered in Nassau, Bahamas. At all relevant times, Dowdell has been one of the directors of Vavasseur. Vavasseur is not registered to do business in any state in which Dowdell has resided or done business. Vavasseur Corporation is the alter ego of Dowdell.

15.   **Dowdell, Dutcher & Associates, Inc**. ("DDA") is an inactive Florida corporation that was incorporated in 1989. During the period from April 1998 through September 1999, DDA operated as Vavasseur's U.S. administrative agent in connection with the trading program at issue in this action. At all relevant times, Dowdell has been president of DDA.

16.   **Emerged Market Securities, DE-LLC** ("EMS") is a Delaware corporation formed in April 2000. At all relevant times, Dowdell has been a principal of EMS.

4

17.    **Daniel Derouard** ("**Derouard**") is approximately 53 years old and a resident of Westport, Connecticut.

**RELIEF DEFENDANTS**

18.    **Mary E. Dowdell** (**nee Pierce**) is married to Defendant Dowdell and resides with him in Charlottesville, Virginia. Dowdell used $274,000 of Vavasseur investor funds in June 2000 to purchase a home in Charlottesville for Mary Dowdell and their daughter-in-law, Rebecca Dowdell, who hold title jointly. In addition, throughout the life of the Vavasseur program, Dowdell regularly transferred Vavasseur investor money to accounts over which Mary Dowdell exercised individual and/or joint control. Mary Dowdell has no legitimate claim to these funds.

19.    **Adam Dowdell** is Defendant Dowdell's son. He resides in Keswick, Virginia. Adam Dowdell and his wife Wendy Dowdell have jointly received at least $25,000 of Vavasseur investor funds. Dowdell has also used at least $249,800 of investor funds to purchase property for them in Louisa, Virginia in March 2001. Neither Adam nor Wendy Dowdell have any legitimate claim to these funds.

20.    **Wendy Dowdell** is Defendant Dowdell's daughter-in-law. She is married to Adam Dowdell and resides with him.

21.    **Terry Dowdell Jr.** is Defendant Dowdell's son. Terry Dowdell Jr. is an inmate at the federal correctional institution in Coleman, Florida. Terry Dowdell Jr. has received at least $20,000 in investor funds. He has no legitimate claim to these funds.

22.    **Rebecca Dowdell** is Defendant Dowdell's daughter. She resides in Charlottesville, Virginia. Rebecca Dowdell has received more than $40,000 of Vavasseur investor funds, as well as joint title to the home discussed above. She has no legitimate claim to these funds.

5

23.    **David Dowdell** is Defendant Dowdell's brother. He resides in Westerville, Ohio. Dowdell has transferred more than $40,000 of investor funds to David Dowdell. David Dowdell has no legitimate claim to these funds.

24.    **Marcia Dowdell** is Defendant Dowdell's mother. She resides in Columbus, Ohio. Dowdell has transferred more than $40,000 of Vavasseur investor funds to Marcia Dowdell. She has no legitimate claim to these funds.

25.    **Steven Pierce** is Defendant Dowdell's brother-in law. He resides in St. Petersburg, Florida. Stephen Pierce and Cynthia Pierce jointly received $65,468.74 of Vavasseur investor funds on May 1, 2000. He has no legitimate claim to these funds.

26.    **Cynthia Pierce** is Defendant Dowdell's sister-in-law. She resides in St. Petersburg, Florida. Cynthia Pierce and Steven Pierce jointly received $65,468.74 of Vavasseur investor funds on May 1, 2000. She has no legitimate claim to these funds.

27.    **Nona Pierce** is Defendant Dowdell's mother-in-law. She resides in St. Petersburg Florida. Nona Pierce received $78,901.39 of Vavasseur investor funds on June 2, 2000. She has no legitimate claim to these funds.

28.    **Willowood Design Corporation** ("Willowood") is a Virginia corporation that Dowdell caused to be incorporated in June 2000 and whose president is Mary E. Dowdell. On June 15, 2000, Dowdell spent $33,038.44 to purchase a car for Willowood, and transferred another $100,000 to Willowood through his real estate attorney on July 20, 2000. Willowood has no legitimate claim to these funds.

29.    **Authorized Auto Service, Inc.** ("Authorized Auto") is a Virginia corporation that Dowdell caused to be incorporated in February 2001. Prior to the commencement of this lawsuit, Dowdell transferred $1,000,000 of Vavasseur investor funds to Authorized Auto. At the

6

time that this money was transferred to Authorized Auto, Dowdell was the Chief Executive Officer and a Director of Authorized Auto. Authorized Auto has no legitimate claim to these funds.

## THE VAVASSEUR SCHEME

### Misrepresentations Contained in the Investment Contracts

30.    In April 1998, Dowdell began marketing an investment program involving the trading of medium term debentures and other private bank debt instruments through Vavasseur Corporation ("Vavasseur"), a Bahamian corporation. For years prior to the Vavasseur program, Dowdell had been marketing, albeit without much success, similar investment programs.

31.    From April 1998 to at least March 2001, Dowdell has raised at least $29 million from more than 50 investors from the United States and abroad through the Vavasseur program.

32.    Investors who participated in the Vavasseur program entered into investment contracts with Vavasseur Corp. The investment contracts, termed "Discretionary Investment Management Agreements," falsely represented that investor funds would be maintained in a bank account registered as "Vavasseur Corp., for the benefit of (Client's name)." The contracts appointed Vavasseur to serve as the investment advisor to the investors, and authorized Vavasseur to use the investor's funds to purchase "[s]hort-term and medium-term debenture instruments . . . issued by one or more of the major money center banks of either North America or Western Europe . . . ." In the investment contracts, Vavasseur projected gross returns to the investors of 4 percent per week for 40 weeks of trading contemplated each year, amounting to an annualized gross return of 160 percent. The investment contracts falsely represented that all

7

commissions or fees to Vavasseur and/or any intermediaries shall be paid solely from the profits realized from Vavasseur's trading activity.

33. Contrary to the representations contained in the Vavasseur investment contracts, investor funds were not deposited in a Vavasseur bank account. Vavasseur did not use investor funds to buy and sell bank debentures or engage in any trading at all.

34. Vavasseur investors deposited their investments by check or wire into accounts controlled by Dowdell at AmSouth Bank in Florida.

35. Upon receiving these investor funds, Dowdell sent written confirmation of such receipt to the investors. In these confirmation letters, Dowdell falsely represented that these funds had been promptly wired to bank account in the Bahamas owned by Vavasseur. As stated above, no such transfers occurred. Instead, Vavasseur investor money was pooled together and held in Dowdell's various AmSouth accounts.

36. During the period from April 1998 to at least March 2001, Dowdell, through the various entity Defendants he controlled, made monthly payments to investors, and falsely represented to them in monthly distribution letters that these payments constituted "profits" from Vavasseur's trading activities. In fact, investors were paid from out of the pool of Vavasseur investor funds that were in Dowdell's Amsouth accounts. During the period from April 1998 through approximately March 2001, Dowdell used approximately $13 million of the $29 million of investor deposits in his AmSouth accounts for this purpose.

37. The remainder of Vavasseur investor funds has been diverted, and, to a significant extent, dissipated by Dowdell. Dowdell has used more than $1.3 million of investor funds to pay promoters. He has misappropriated more than $1.5 million of investor funds to purchase homes for himself and his family in Charlottesville, Virginia. Dowdell has withdrawn more than

8

$450,000 in cash, and transferred more than $330,000 directly to family relatives, whom the SEC has named as Relief Defendants. He has transferred more than $400,000 to personal checking accounts he has maintained at other banks. He has used Vavasseur investor funds to pay approximately $340,000 to the I.R.S., to pay another $90,000 to attorneys, and he has transferred an additional $475,000 to various persons. He set up a personal on-line trading account at Datek Trading and deposited another $250,000 of Vavasseur investor funds into that account.

38.     What Dowdell has not yet spent of investor funds, he has diverted. Dowdell's Amsouth accounts are now closed, and more than $12 million of Vavasseur funds has been transferred to other accounts owned, controlled or for the benefit of Dowdell.

39.     In short, Dowdell has been operating a Ponzi scheme, which he has used to misappropriate millions of dollars from investors.

## Ongoing Investment Activity; Location of Investor Assets

40.     In late March 2001, Dowdell, through his attorney, advised the staff that Vavasseur had ceased all U.S. operations, had terminated its relationship with Dowdell and his business entities, and was returning all U.S. investor money. Dowdell provided wire transfer confirmations for most of the claimed U.S. investors, which showed the return of their principal, amounting to approximately $1.8 million in the aggregate.

41.     Bank records of the American investors subsequently obtained by the SEC reveal that most of them immediately reinvested in another entity with which Dowdell is associated: Wicoff Overseas Corp. This time, however, the investments were initially deposited in overseas accounts.

42.     As alleged above, Dowdell has now transferred the remainder of investor money out of his AmSouth accounts. Some of this money went to other bank accounts in his name or

9

under his control. The vast majority of this money, $12 million, was transferred by wire to a trust account at The Chase Manhattan Bank in New York City, New York, held by Wadsworth & Associates, P.C. in August 2000.

43.    In September 2000, the $12 million was then transferred to a Terry Dowdell account at The Chase Manhattan Bank.

44.    Bank account records obtained by the SEC on November 8, 2001 reveal a current balance of more than $10 million in this account.

45.    These bank account records also reveal that Dowdell has continued to raise money from investors for the Vavasseur program in the United States.

**Dowdell is the Alter Ego of Vavasseur Corp.**

46.    Dowdell has been acting as the alter ego of Vavasseur throughout the life of the Vavasseur program. Dowdell used Vavasseur as a device to disguise wrongs and obscure fraud.

47.    Vavasseur is a sham corporation that did not actually perform the tasks that Dowdell represented to investors that it was to have performed in connection with the Vavasseur program. Contrary to Dowdell's representations to investors: (i) Vavasseur did not engage in any trading, or otherwise cause investor money to be used in any trading program; and (ii) investor money was not deposited in any Vavasseur accounts in the Bahamas, or anywhere else.

48.    At all relevant times, Dowdell exerted undue control over the activities of Vavasseur. Dowdell is the only Vavasseur director, officer, or employee identified by name in any communications between Vavasseur and its investors. Dowdell's name is the only one that appears on the investment contracts signed by Vavasseur or in any correspondence with investors. Dowdell was the billing party for the internet service account through which Vavasseur maintained its e-mail address and engaged in electronic communications with

10

Vavasseur investors. Dowdell, and not Vavasseur, controlled the investor money at all relevant times.

49.    Dowdell has made no attempt to respect the property rights of Vavasseur.

Dowdell has commingled in his AmSouth account funds that he represented to investors were to be transferred to Vavasseur accounts with his personal funds. Dowdell misappropriated millions of dollars of investor funds that he represented to investors were under the control of Vavasseur.

## Dowdell's Promoters for the Vavasseur program

50.    Dowdell did not actively promote the Vavasseur program himself. Instead, he employed a handful of "introducing parties" to locate investors both in the United States and abroad. Dowdell used a multi-level marketing scheme to accomplish this, paying his primary marketers directly. These primary marketers in turn would share their compensation with downstream marketers. The two primary marketers who dealt directly with Dowdell in the United States were Mason and Mechlenburg.

### Mechlenburg

51.    Since the inception of the Vavasseur program, Mechlenburg has solicited investors both in the U.S. and abroad, principally in Denmark. Since April 1998, Mechlenburg has raised millions of dollars of investor money for this scheme.

52.    In promoting the Vavasseur program to investors, Mechlenburg made false statements to investors about Dowdell's experience.

53.    Mechlenburg made false statements to investors about the very existence of the trading program being offered through Vavasseur, the use of investor proceeds, the source of payments made to investors, and the very existence of the trading programs being offered.

11

54.     Mechlenburg knew, or was reckless in not knowing, that trading programs such as the Vavasseur program did not exist, particularly because the SEC had entered an Order against her on May 26, 1996 in connection with a similar fictitious trading program that she had been operating herself in the early 1990s. The SEC determined that Mechlenburg had misappropriated investor funds in that program, and entered an Order barring her from associating with any brokers or dealers.

55.     Notwithstanding the SEC's Order, Mechlenburg acted as a broker with respect to the Vavasseur program.

56.     Mechlenburg has received more than $500,000 in commissions in connection with her introduction of investors to the Vavasseur program.

### Mason

57.     In 1996, Mason introduced Mechlenburg to an earlier trading program that Dowdell was promoting (the "RIA program"). Dowdell was not the program manager or trader for this earlier program, and he informed both Mechlenburg and Mason of this fact prior to Mechlenburg's investing in the RIA program.

58.     Mason falsely attributed Mechlenburg's purported earlier success in the RIA program to Dowdell, even though Mason knew that Dowdell was not the trader or program manager.

59.     Mason introduced the next two investors to the Vavasseur program. Mason recommended the Vavasseur program to them on the basis of Mechlenburg's track record with Dowdell.

12

60. At the time that Mason recommended the Vavasseur program to these two investors, Mason had not received any evidence of any actual trading of the type of bank instruments that were purportedly being traded in the Vavasseur program.

61. At the time that Mason recommended the Vavasseur program to these two investors, Mason was aware of the prime bank fraud alert contained on the SEC's website, describing fraudulent investment schemes very similar to the Vavasseur program.

62. At the time that Mason recommended the Vavasseur program to these two investors, Mason had no knowledge of, nor did he seek to verify, whether Dowdell engaged in any trading activity at all.

63. At the time that Mason recommended the Vavasseur program to the two investors discussed above and at the time that Mason introduced Mechlenburg to RIA, Mason either knew or was reckless in not knowing that the trading programs offered by Dowdell were fraudulent.

64. Mason has received more than $500,000 in commissions from Dowdell in connection with downstream investors that Mechlenburg was responsible for introducing to the Vavasseur program.

65. In addition to the Vavasseur program, Mason also attempted to raise money from wealthy investors for various other fraudulent trading programs offered by Dowdell. Mason conducted introductory meetings with various prospective investors and provided them with promotional materials. Both in the promotional materials and at the meetings, Mason marketed trading programs involving the trading of bank debentures that uniformly promised extremely high returns with little or no risk. Mason misrepresented the risk, the return, and the very existence of these other programs.

13

66.     Mason misrepresented to one prospective investor that a $10 million investment, without risk of loss to principal, would generate a profit of between 80% and 800% within 5 weeks, and that the Federal Reserve Bank was involved in the program. Mason attempted to market another private bank trading program, called the Private Placement Reserved Funds Program in which he represented in promotional materials that historically the programs have realized a gross annual yield of 600%.

67.     Mason conducted virtually no independent due diligence to confirm even the existence of the Dowdell's trading programs, much less the type of returns that he was representing to prospective investors. Mason either knew, or was reckless in not knowing, that the investment schemes that he was marketing to these prospective investors were fraudulent.

68.     Mason also represented to at least one investor that Dowdell had been introduced to him by a former SEC attorney, as if to suggest SEC endorsement of Dowdell. This representation was false.

## THE EMS SCHEME

69.     In early 2000, Dowdell began marketing yet another fictitious trading program (the "EMS program"). Dowdell represented to potential investors that the EMS program was sponsored by the Federal Reserve Bank, involved the trading of foreign bank instruments, and promised gross annual returns exceeding 400 percent. Dowdell represented that the EMS program was being offered, by invitation only, by the Federal Reserve Bank to select entities that promised to use their earnings for good causes.

70.     This new Dowdell scheme was aggressively promoted by Defendant Derouard. Derouard attempted to market the EMS program to the North Slope Borough (the "Borough"), a large municipality in the State of Alaska with an investment fund of over $1 billion. Dowdell

14

and Derouard spent months attempting to convince the Borough to invest $100 million in his fictitious EMS program.

71. Around March 2000, Derouard began marketing this program to Peter Gaide, a former investment advisor for the Borough who was acting as an intermediary to the Borough. Gaide, in turn, marketed the program to the Borough, first through James Sharpe, a financial consultant for the Borough, and later directly to the Borough itself. Derouard and Dowdell both made numerous false statements to Gaide and others, including that: (i) the Federal Reserve Bank sponsored, endorsed or was otherwise involved in the EMS program; (ii) Dowdell had a personal relationship with at least one Federal Reserve Bank official who was involved in the EMS program; (iii) the EMS program actually existed; (iv) the investment was safe; and (v) other investors had successfully participated in Federal Reserve sponsored programs such as the EMS program.

## MECHLENBURG OPERATED AS AN UNREGISTERED BROKER-DEALER

72. Mechlenburg offered and sold investments in the Vavasseur program to investors as described above.

73. Mechlenburg received more than $500,000 in compensation in the form of commissions based on her sales of investments in the Vavasseur program.

74. At the time that Mechlenburg offered and sold investments in the Vavasseur program, she was not registered with the SEC as a broker-dealer and had not obtained the necessary regulatory approval to sell securities as a properly licensed associated person of registered broker-dealers.

15

## COUNT I

### Violations of Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)] by Defendants

75.    Paragraphs 1 through 74 are realleged and incorporated by reference.

76.    At all relevant times, Defendants, in the offer and sale of securities in the form of investment contracts, by the use of the means and instruments of transportation and communication in interstate commerce and by the use of the mails, directly and indirectly, have employed devices, schemes and artifices to defraud, as more fully describe in paragraphs 1 through 74 above.

77.    At all relevant times, Defendants have made false and misleading statements of material fact or have omitted to state material facts to investors and prospective investors concerning, among other things, the use of investor proceeds, the source of payments made to investors, and the very existence of the trading programs being offered.

78.    At all relevant times, Defendants knew, or were reckless in not knowing, that the statements or omissions described in Paragraphs 75 through 77 above were materially false or misleading.

79.    By reason of the activities described in Paragraphs 75 through 78 above, Defendants violated Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## COUNT II

### Violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)] by Defendants

80.    Paragraphs 1 through 74 are realleged and incorporated by reference.

81.    At all relevant times, Defendants, in the offer and sale of securities in the form of investment contracts, by the use of the means and instruments of transportation and

16

communication in interstate commerce and by the use of the mails, directly and indirectly, have

obtained property by means of untrue statements of material fact or omissions to state material

facts necessary in order to make the statements made, in light of the circumstances under which

they were made, not misleading, and have engaged in transactions, practices or courses of

business which have operated as a fraud and deceit upon purchasers of securities.

82.     By reason of the activities described in Paragraphs 80 and 81, Defendants violated

Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)].

## COUNT III

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder
### [15 U.S.C. §78j(b) and 17 C.F.R. §240.10b-5]
### by Defendants Dowdell, Mechlenburg, Mason, Vavasseur and DDA

83.     Paragraphs 1 through 74 are realleged and incorporated by reference.

84.     At all relevant times, Defendants Dowdell, Mechlenburg, Mason, Vavasseur and

DDA, in connection with the purchase and sale of securities in the form of investment contracts,

directly and indirectly, by the use of the means and instrumentalities of interstate commerce or of

the mails, have employed schemes and artifices to defraud; have made untrue statements of

material fact and have omitted to state material facts necessary in order to make the statements

made, in the light of the circumstances under which they were made, not misleading; and have

engaged in acts, practices and courses of business which operated, and are operating, as a fraud

and deceit upon the investors as discussed in Paragraphs 1 through 74 above.

85.     At all relevant times, Defendants Dowdell, Mechlenburg, Mason, Vavasseur and

DDA knew or were reckless in not knowing the activities described in Paragraphs 83 and 84

above.

17

86.    By reason of the activities described in Paragraphs 83 through 85 above,

Defendants Dowdell, Mechlenburg, Mason, Vavasseur, and DDA have violated Section 10(b) of

the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 [17 C.F.R. §240.10b-5] thereunder.

## COUNT IV

### Violations of Section 15(a) of the Exchange Act
### [15 U.S.C. §78o(a)] by Defendant Mechlenburg

87.    Paragraphs 1 through 74 are realleged and incorporated by reference.

88.    At all relevant times, Mechlenburg has been in the business of effecting

transactions in securities for the accounts of others, as is more fully described in Paragraphs 1

through 74 above.

89.    At all relevant times, Mechlenburg has made use of the mails and of the means

and instrumentalities of interstate commerce to effect transactions and to induce or attempt to

induce the purchase of securities, as more fully described in paragraphs 1 through 74 above.

90.    At the times alleged in the Complaint, Mechlenburg was not registered as a broker

or dealer, as required by Section 15(b) of the Exchange Act [15 U.S.C. §78o(b)].

91.    By reason of the activities described in paragraphs 87 through 90 above,

Mechlenburg has violated Section 15(a)(1) of the Exchange Act.

## COUNT V

### Violations of Section 15(c) of the Exchange Act [15 U.S.C. §78o(c)]
### And Rule 15c1-2 thereunder [17 C.F.R. 250.15c1-2]
### by Defendant Mechlenburg

92.    Paragraphs 1 through 91 are realleged and incorporated by reference.

93.    At all relevant times, Mechlenburg was not registered with the SEC as a broker or

dealer, as more fully described in Paragraphs 72 through 74 above.

18

94.     At all relevant times, Mechlenburg, acting as a broker, has made use of the mails

and instrumentalities of interstate commerce, and has induced the purchase and sale of securities,

otherwise than on a national securities exchange of which she is a member, by means of

manipulative, deceptive and fraudulent devices and contrivances, as more fully described in

Paragraphs 1 through 74 above.

95.     At all relevant times, Mechlenburg knew, or was reckless in not knowing, of the

activities described in Paragraphs 92 through 94 above.

96.     By reason of the activities described in Paragraphs 92 through 95 above,

Mechlenburg violated Section 15(c) of the Exchange Act [15 U.S.C. §78o(c)] and Rule 15c1-2

thereunder [17 C.F.R. 240.15c1-2].

## **RELIEF REQUESTED**

WHEREFORE, the SEC requests that the Court:

## I.       **FINDING THAT DEFENDANTS COMMITTED VIOLATIONS**

Find that Defendants Dowdell, Mechlenburg, Mason, Derouard, Vavasseur, DDA and

EMS committed the violations alleged above.

## II.      **ORDER RESTRAINING AND ENJOINING THE VAVASSEUR DEFENDANTS FROM VIOLATION OF SECTION 17(a) OF THE SECURITIES ACT**

Grant a Temporary Restraining Order and Orders of Preliminary and Permanent

Injunction in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure

restraining and enjoining Dowdell, Mechlenburg, Mason, DDA, Vavasseur (collectively the

"Vavasseur Defendants"), their officers, agents, servants, employees, attorneys, and those

persons in active concert or participation with them who receive actual notice of this Order by

personal service or otherwise, and each of them, from, directly or indirectly in the offer or sale of

19

any securities, by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails:

(1)    employing any device, scheme or artifice to defraud;

(2)    obtaining money or property by means of any untrue statement of material fact or omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(3)    engaging in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser,

in violation of Sections 17(a)(1), (2) and (3) of the Securities Act [15 U.S.C. §§77q(a)(1), (2) and (3)].

## III.    ORDER PERMANENTLY ENJOINING DEFENDANTS DEROUARD AND EMS FROM VIOLATION OF SECTION 17(a) OF THE SECURITIES ACT

Grant an Order of Permanent Injunction enjoining Derouard, EMS, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, and each of them, from, directly or indirectly in the offer or sale of any securities, by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails:

(1)    employing any device, scheme or artifice to defraud;

(2)    obtaining money or property by means of any untrue statement of material fact or omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(3)    engaging in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser,

20

in violation of Sections 17(a)(1), (2) and (3) of the Securities Act [15 U.S.C. §§77q(a)(1), (2) and

(3)].

## IV.    ORDER RESTRAINING AND ENJOINING THE VAVASSEUR DEFENDANTS FROM VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5

Grant a Temporary Restraining Order and Orders of Preliminary and Permanent

Injunction in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure

restraining and enjoining Dowdell, Mechlenburg, Mason, DDA, Vavasseur, their officers, agents,

servants, employees, attorneys, and those persons in active concert or participation with them

who receive actual notice of this Order by personal service or otherwise, and each of them, from,

directly or indirectly, in connection with the purchase or sale of securities, by the use of any

means or instrumentality of interstate commerce or of the mails, or of any facility of any national

securities exchange:

(1)    employing any device, scheme or artifice to defraud;

(2)    making any untrue statement of material fact or omitting to state a material fact

necessary in order to make the statements made, in the light of the circumstances

under which they were made, not misleading; or

(3)    engaging in any act, practice, or course of business which operates or would

operate as a fraud or deceit upon any person,

21

in violation of Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder

[17 C.F.R. §240.10b-5].

## V.    ORDER RESTRAINING AND ENJOINING MECHLENBURG FROM VIOLATION OF SECTION 15(a) OF THE EXCHANGE ACT

Grant a Temporary Restraining Order and Orders of Preliminary and Permanent

Injunction in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure

restraining and enjoining Mechlenburg, her agents, servants, employees, attorneys, and those

persons in active concert or participation with her who receive actual notice of this Order by

personal service or otherwise, and each of them, from, directly or indirectly, by the use of any

means or instrumentality of interstate commerce or of the mails, effecting any transaction in, or

inducing or attempting to induce the purchase or sale of any security (other than an exempted

security or commercial paper, bankers' acceptances or commercial bills) unless registered with

the SEC as a broker or dealer in accordance with Section 15(b) of the Exchange Act [15 U.S.C.

§78o(b)], in violation of Section 15(a) of the Exchange Act [15 U.S.C. §78o(a)].

## VI.   ORDER RESTRAINING AND ENJOINING MECHLENBURG FROM VIOLATION OF SECTION 15(c) OF THE EXCHANGE ACT AND RULE 15c1-2

Grant a Temporary Restraining Order and Orders of Preliminary and Permanent

Injunction in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure

restraining and enjoining Mechlenburg, her agents, servants, employees, attorneys, and those

persons in active concert or participation with her who receive actual notice of this Order by

personal service or otherwise, and each of them, from, directly or indirectly, while acting as a

broker or dealer, making use of the mails or any means or instrumentality of interstate commerce

to effect any transaction in, or induce or attempt to induce the purchase or sale of, any securities

(other than an exempted security or commercial paper, bankers' acceptances or commercial bills)

22

otherwise than on a national securities exchange of which she is a member, by means of any act, practice or course of business which operates or would operate as a fraud or deceit upon any person; or by means of any untrue statement of material fact or omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, where such statement or omission is made with knowledge or reasonable grounds to believe that it is untrue or misleading, in violation of section 15(c) of the Exchange Act [15 U.S.C. §78o(c)], and Rule 15c1-2 [17 C.F.R. §240.15c1-2] promulgated thereunder.

## VII.    ORDER FREEZING ASSETS OF THE VAVASSEUR DEFENDANTS

Grant a Temporary Restraining Order and Orders of Preliminary and Permanent Injunction in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure providing the following:

A.    Freezing all funds and other assets of the Vavasseur Defendants until the resolution of this matter;

B.    Restraining and enjoining the Vavasseur Defendants, their officers, agents, servants, employees, attorneys and those persons in active concert or participation with them who receive actual notice of this Order, by personal service or otherwise, from, directly or indirectly:

> 1.    Transferring, selling, assigning, pledging, dissipating, concealing or otherwise disposing of, in any manner, any funds, assets, or other property belonging to, or in the possession, custody or control of the Vavasseur Defendants, wherever located, and including any and all accounts at any financial institution in the name of any one or more of the Vavasseur Defendants, and any

23

and all accounts at any financial institution in which any one or more of the

Vavasseur Defendants have signatory authority or a beneficial interest;

2.      Opening or causing to be opened any safe deposit boxes, commercial mail

boxes, or storage facilities titled in the name of any Vavasseur Defendant, or

subject to access by any Vavasseur Defendant, without providing the SEC prior

notice and an opportunity to inspect the contents in order to determine that they

contain no assets subject to this Order;

3.      Transferring any funds or other assets subject to this Order for attorneys'

fees or living expenses, except after providing prior written notice to the SEC and

after obtaining prior approval by the Court.

## VIII.  ORDER RESTRAINING AND ENJOINING VAVASSEUR DEFENDANTS FROM OFFERING INVESTMENTS AND RAISING INVESTOR FUNDS

Grant a Temporary Restraining Order and Orders of Preliminary and Permanent

Injunction in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure

restraining and enjoining the Vavasseur Defendants, their officers, directors, subsidiaries, agents,

servants, employees, and those persons in active concert or participation with them who receive

actual notice of this Order by personal service or otherwise, and each of them, from: (1) soliciting,

receiving or depositing into any account any additional investor funds; (2) promoting in any way

their purported investment schemes as described in the Complaint; and (3) otherwise offering or

selling investments relating to debenture transactions and off-shore investments.

24

## IX.    IDENTIFICATION OF ASSETS BY THE VAVASSEUR DEFENDANTS

Grant an Order requiring the Vavasseur Defendants identify, value, and state in writing

the current whereabouts of all of their assets and funds having a value greater than $5,000,

including, but not limited to, all real and personal property.

## X.    REPATRIATION OF ASSETS BY THE VAVASSEUR DEFENDANTS

Grant a Temporary Restraining Order and Orders of Preliminary and Permanent

Injunction in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure requiring

that the Vavasseur Defendants take such steps as are necessary to repatriate to the territory of the

United States of America all assets and funds, which are held by them or which are under their

direct or indirect control, jointly or singly.

## XI.    ACCOUNTING

Grant a Temporary Restraining Order and Orders of Preliminary and Permanent

Injunction in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure

requiring that each of the Vavasseur Defendants must provide this Court and the SEC's counsel

with (1) an accounting of all assets and funds received, directly or indirectly, from individuals

who invested monies in the entities described in the SEC's Complaint, or in similar investments

offered, directly or indirectly, by the Vavasseur Defendants, the uses to which such funds were

put and the amounts of any remaining funds and their location; and (2) an accounting of the

assets and liabilities of each of the Vavasseur Defendants.

25

## XII.  ORDER PROHIBITING DESTRUCTION OF DOCUMENTS BY VAVASSEUR DEFENDANTS

Grant a Temporary Restraining Order and Orders of Preliminary and Permanent

Injunction in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure ordering

that the Vavasseur Defendants, their officers, agents, servants, employees, attorneys, and those

persons in active concert or participation with them who receive actual notice of this Order by

personal service or otherwise, and each of them, be and hereby are temporarily restrained and

enjoined from destroying, mutilating, concealing, altering or disposing of in any manner, any of

the books, records, documents, correspondence, brochures, manuals, obligations or other

property of or pertaining to the offer and sale of securities by any Defendant.

## XIII.  EXPEDITED DISCOVERY

Grant a Temporary Restraining Order and Order of Preliminary Injunction that the SEC

and the Vavasseur Defendants are granted leave to serve interrogatories, requests for documents,

and requests for admissions, take depositions and subpoena documents immediately, and the time

allowed to respond to such discovery requests is shortened to four (4) days after a request is

served unless otherwise ordered by the Court.. The Relief Defendants are hereby ordered to

identify to the Court and the SEC within six (6) days any legitimate claim that they may have to

the assets they received from any Vavasseur Defendant.

## XIV.  SERVICE OF ANSWERING AFFIDAVITS, MEMORANDA, AND OTHER EVIDENCE BY VAVASSEUR DEFENDANTS

Grant an Order requiring that the Vavasseur Defendants shall serve answering affidavits,

pleadings, and legal memoranda on counsel for the SEC not less than four (4) business days prior

to the hearing on the SEC's request for preliminary injunction. The Vavasseur Defendants shall

serve copies of all such materials on the SEC by personal service, facsimile, or overnight mail

26

directed to Steven J. Levine, Midwest Regional Office, Securities and Exchange Commission,

500 West Madison Street, Suite 1400, Chicago, Illinois 60661, facsimile (312) 353-7398.

## XV.   WITNESS LIST

Grant an Order requiring that if any party to this action intends to present the testimony of

any witness at the hearing on a preliminary injunction in this matter, that such party shall, at least

two (2) business days prior to the scheduled date and time of hearing, serve on counsel for the

other parties a statement of the name, address, telephone number of any such witness, and either

a summary of the witness' expected testimony, or the witness' affidavit or declaration revealing

the substance of such witness' expected testimony.

## XVI.   ORDER FINDING VAVASSEUR IS ALTER EGO OF DOWDELL

Grant an Order finding that the Vavasseur is the alter ego of Dowdell. and piercing the

corporate veil to treat Dowdell and Vavasseur as the same.

## XVII.  DISGORGEMENT BY VAVASSEUR DEFENDANTS

Grant an Order requiring the Vavasseur Defendants to disgorge any and all ill-gotten

gains that they each received as a result of their wrongful conduct, including prejudgment

interest.

## XVIII. DISGORGEMENT BY RELIEF DEFENDANTS

Grant an Order requiring each of the Relief Defendants to disgorge any and all ill-gotten

gains that they received from Defendants, including prejudgment interest.

## XIX.   CIVIL PENALTIES AGAINST THE VAVASSEUR DEFENDANTS

Grant an Order imposing civil penalties upon the Vavasseur Defendants pursuant to

Section 20(d) of the Securities Act [15 U.S.C. §77t(d)] and Section 21(d)(3) of the Exchange

Section 21(d)(3) of the Exchange Act [15 U.S.C. §78u(d)(3)].

## XX.    JURISDICTION

Retain jurisdiction of this action in accordance with the principals of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## XXI.    OTHER ANCILLARY AND EMERGENCY RELIEF

Grant appropriate ancillary and emergency relief to prevent further secretion or dissipation of assets purchased with investor funds.

## XXII.    OTHER RELIEF

Grant Orders for such further relief as the Court may deem appropriate.

Respectfully Submitted,

**For Plaintiff, U.S. Securities and Exchange Commission:**

Celiza P. Bragança (IL ARDC # 06226636)
Steven J. Levine (IL ARDC# 6226921)

Attorneys for Plaintiff
U. S. Securities and Exchange Commission
500 West Madison Street Suite 1400
Chicago, Illinois 60601-2511
(312) 353-7390

**For Local Counsel:**

JOHN L. BROWNLEE
United States Attorney

Jean B. Hudson
Assistant United States Attorney
VSB No. 25870

Dated: April 30, 2002

29